AO 91 (REV.5/85) Criminal Complaint

AUSA MICHAEL F. IASPARRO  815-987-4444

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

UNITED STATES OF AMERICA

v.

**CRIMINAL COMPLAINT**

SHERMAN B. ROBERSON,
also known as "Bread"

CASE NUMBER: 08 CR 50020

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief:

On April 4, 2008, in Cook County, in the Northern District of Illinois, Western Division, SHERMAN B. ROBERSON, defendant herein, possessed with the intent to distribute a controlled substance, namely approximately 65 gross grams of a mixture containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title _____ 21 _____, United States Code, Section __841(a)(1)__. I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

_____
Signature of Complainant
STEPHEN P. SMITH
ATF

Sworn to before me and subscribed in my presence,

April 4, 2008                                    at   Rockford, Illinois
Date                                                 City and State

P. MICHAEL MAHONEY, U.S. Magistrate Judge
Name & Title of Judicial Officer                     Signature of Judicial Officer

**F I L E D**

APR 0 4 2008

**MAGISTRATE JUDGE P. MICHAEL MAHONEY
United States District Court**

NORTHERN DISTRICT OF ILLINOIS    )
                                ) ss.
WESTERN DIVISION                )

## AFFIDAVIT

I, STEPHEN P. SMITH, being duly sworn on oath state:

1.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have worked as an ATF Special Agent for approximately 22 years. My duties include investigating violations of Title 21, United States Code, Section 841(a)(1), which makes it a federal crime to distribute and possess with intent to distribute controlled substances, including cocaine and cocaine base. I have been involved in numerous investigations of drug trafficking and the illegal possession of firearms, and have worked closely with state and local police agencies investigating drug and firearms-related offenses. In addition to my experience as an ATF Special Agent, I have received training in the enforcement of drug and firearms-related laws from the ATF.

2.     I have been assigned to assist in the investigation into the cocaine base trafficking activities of Sherman B. Roberson, also known as "Bread" (hereinafter "Roberson"). Since this affidavit is being submitted for the limited purposes of establishing probable cause that Roberson committed the offense of distribution of cocaine base, in violation of Title 21, United States Code, Section 841(a)(1), and probable cause for the seizure of a vehicle driven by Roberson on March 12, 2008, in which he delivered cocaine base, pursuant to Title 21, United States Code, Section 853, I have not included each and every fact known to me concerning this investigation. This affidavit is based upon information obtained by me personally and information provided to me by other law enforcement agents, officers, and others identified herein.

1

3.      On February 21, 2008, Rockford Police Department Narcotics Unit Detective James Rossow and I met with a confidential source (hereinafter "CS") who told us that over the last two to three years, he/she has purchased approximately 63 gram quantities of crack cocaine (approximately two and one-quarter ounces) from Roberson on a number of occasions. The CS stated that Roberson currently lives on the south side of Chicago, and gave us Roberson's cellular telephone number and his Nextel "Direct Connect" number, which corresponds to the walkie talkie function of Nextel cellular telephones.

4.      On March 4, 2008, at approximately 4:06 p.m., the CS "chirped" (used the Direct Connect walkie talkie feature) Roberson at the number she had for him. This conversation was recorded. The CS told Roberson that he/she had "1700," referring to $1,700, and said he/she needed to "get right," meaning purchase 63 grams of crack cocaine from Roberson. Roberson asked the CS if he/she could get a ride to Chicago, to which the CS responded, "You got me?" Roberson said, "I always got you." Roberson and the CS agreed to talk at a later time.

5.      On March 5, 2008, at approximately 4:03 p.m., the CS "chirped" Roberson, and Roberson asked the CS if he/she was still coming down to Chicago. The CS told Roberson he/she would have to find a ride, and asked Roberson if he could come to Rockford. Roberson said he might come to Rockford later, and told the CS to make sure he/she "had her roll," referring to money to purchase crack cocaine. Roberson told the CS he would give the CS a call when he was on his way. This conversation was recorded. Later that day, in an unrecorded conversation, Roberson "chirped" the CS and told the CS he would not be able to make it out to Rockford, but might be able to come out the following day.

2

6. On March 6, 2008, at approximately 11:26 a.m., the CS "chirped" Roberson and told him that he/she could still not get a ride to Chicago. Roberson was unable to come out to Rockford, and he and the CS agreed to talk the following week. This conversation was recorded.

7. On March 10, 2008, at approximately 2:48 p.m., the CS called Roberson. Roberson told the CS he had just gotten back from Atlanta. The CS told Roberson that he/she "still need[ed] that," referring to 63 grams of crack cocaine. Roberson told the CS that was not a problem. The CS told Roberson he/she would be in Chicago on Wednesday March 12, and would call Roberson when he/she was on the way. This conversation was recorded.

8. On March 12, 2008, between 10:30 a.m. and 12:00 p.m., the CS made several attempts to place a recorded call to Roberson, but each time the call went to Roberson's voicemail. At approximately 12:40 p.m., the CS received a call from Roberson that was not recorded, during which Roberson asked the CS if he/she was still coming to Chicago to get the crack cocaine. The CS said yes and told Roberson he/she would call him once they got on the road. At approximately 1:28 p.m., the CS placed a recorded "chirp" to Roberson and told him that he/she was on the way, and would call once he/she got close. ATF Special Agent Sarah Tucker was with the CS at this time. At approximately 3:33 p.m., the CS "chirped" Roberson and told him that he/she was in Chicago on 47th Street. Roberson told the CS to meet him at 47th Street and Cottage Grove in Chicago.

9. Starting at approximately 3:38 p.m. on March 12, the CS wore a recording device. The CS was also given $1,700 of official advance funds to use to purchase crack cocaine from Roberson, and agents searched the CS's person and the vehicle that she and Agent Tucker were in prior to them meeting with Roberson, and found no contraband. Agent Tucker drove with the CS to the meeting spot designated by Roberson, the area of 47th Street and Cottage Grove. At

3

approximately 3:45 p.m., Roberson "chirped" the CS and told him/her that he was in a parking lot in that area, and that he was driving a maroon car. At approximately 3:47 p.m., Agent Tucker and the CS arrived in the parking lot of the Sav-A-Lot store. Roberson pulled up a few moments later and parked next to them, at which time the CS got out and then got into Roberson's vehicle. Roberson was driving a maroon Mercedes Benz vehicle, Model CLS 500, with specialized Indiana license plates bearing the phrase "In God We Trust" and license number 1726. While the CS was in Roberson's vehicle, he told the CS that he wanted the CS and Agent Tucker to follow him to a location a few blocks away where he had the crack cocaine. The CS and Agent Tucker agreed. They then followed Roberson to the area of the 500 block of East 48th Street between Forestville Avenue and Vincennes Avenue in Chicago. Agent Tucker then observed Roberson walk into an apartment building in that block. About twenty minutes later, Agent Tucker saw Roberson come out of the apartment building and get back into his vehicle, at which time the CS went over to Roberson's vehicle and got in the front passenger seat. Once in the car, Roberson handed the CS a plastic bag which contained crack cocaine, in exchange for $1,700. The CS asked if it was "63," referring to 63 grams, and Roberson replied that it was. Roberson then told the CS that he would probably be coming to Rockford on Friday, and the CS asked if he could bring something with him, referring to more crack cocaine. Roberson replied, "I got you." Agent Tucker and the CS then departed the meeting with Roberson and met with other agents who had been conducting surveillance in the area. I took custody of the substance sold by Roberson to the CS. I later weighed it and found it had a gross weight of 65.7 grams. Detective Rossow later conducted a field test on the substance, which resulted in a positive reaction for the probable presence of cocaine. The substance had a hard, rock-

4

like texture and appearance that based on my training and experience I believe to be crack cocaine, which contains cocaine base.

10.    On Friday, March 14, 2008, at approximately 12:58 p.m., the CS placed a recorded call to Roberson and asked him if he would be coming to Rockford later that day. Roberson told the CS he would not drive his own car to Rockford, and would ask around to see if he could get a ride.

11.    On Saturday, March 29, 2008, Roberson and the CS had an unrecorded telephone conversation during which Roberson told the CS he was in Rockford and said he had something for him/her, referring to crack cocaine. The CS told Roberson he/she didn't have the money at that time, and Roberson told him/her to get back to him. The CS reported this to Detective Rossow on Monday, March 31, 2008. On that date, the CS placed a recorded call to Roberson and confirmed that Roberson had been in Rockford the prior weekend. Roberson and the CS discussed another purchase of crack cocaine, and the CS said it would be difficult for him/her to get a ride into Chicago. Roberson and the CS agreed to meet halfway between Rockford and Chicago on Friday, April 4. They agreed to meet in a parking lot near the Woodfield Mall in Schaumburg, Illinois.

12.    On April 3, 2008, at approximately 5:30 p.m., the CS placed a recorded call to Roberson and confirmed that they were to meet the next morning around 10:00-11:00 a.m. in a parking lot near the Woodfield Mall for the purpose of Roberson selling the CS approximately 63 grams of crack cocaine.

13.    On April 4, 2008, at approximately 9:30 a.m., the CS placed a recorded call to Roberson and told Roberson he/she would be leaving shortly. The CS and Agent Tucker, followed by several surveillance agents, then drove to the area of the Woodfield Mall. Prior to departing, the CS and the vehicle were searched for contraband, with negative results. At approximately 1:00 p.m.,

5

Roberson and another male arrived in the designated parking lot in order to meet with the CS. Once there, the CS, who was wearing a recording device, got out of the vehicle he/she had been in with Agent Tucker and got into the backseat of the vehicle that Roberson was in. The CS then gave Roberson $1,700 of official advance funds that had been provided to her, and Roberson gave her a plastic bag which contained an off-white rock-like substance. Shortly thereafter, law enforcement agents surrounded the vehicle Roberson was in and arrested him. Agents recovered the plastic bag with the substance that Roberson had delivered to the CS. The substance had a gross weight of approximately 65 grams and field tested positive for the probable presence of cocaine. Roberson also had $500 on his person, and officers also recovered the $1,700 that had been given to him in exchange for the crack cocaine from the vehicle's center console.

14.     Based upon a review of Roberson's criminal history received from the National Crime Information Center, I know that Roberson has at least four prior felony convictions. In 1997, he was convicted of aggravated battery to a peace officer in Cook County, Illinois and sentenced to three years in the Illinois Department of Corrections. In 2001, he was convicted of possession of more than 15 grams of cocaine in Cook County, Illinois and sentenced to four years in the Illinois Department of Corrections. In 2001, he was convicted of aggravated unlawful use of a weapon in Cook County, Illinois and sentenced to 3 years in the Illinois Department of Corrections. In 2000, he was convicted of possession with intent to distribute cocaine in Champaign County, Illinois and sentenced to probation. That probation sentence was revoked in 2001, and Roberson was re-sentenced to eleven years in the Illinois Department of Corrections. He was paroled in December 2005, and his parole was discharged in December 2007.

6

15.    Based upon my training and experience, and based upon the foregoing information set forth in this affidavit, I believe there is probable cause to conclude that Sherman B. Roberson committed the offense of distribution of a controlled substance, namely cocaine base, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

16.    Also based upon the foregoing information set forth in this affidavit, I believe there is probable cause to conclude that the vehicle that Roberson drove on March 12, 2008, and in which he delivered cocaine base to the CS, is property used in any manner or part to commit or facilitate the commission of a violation of Title 21, United States Code, Section 841(a)(1), and is thus subject to forfeiture and seizure pursuant to Title 21, United States Code, Section 853. Furthermore, without the seizure of this vehicle, which is parked in a private car wash parking lot in Chicago, Illinois, I believe the property may moved and concealed and may not be available for forfeiture pursuant to law.

17.    The information contained in this affidavit is true and correct to the best of my knowledge and belief.

STEPHEN P. SMITH
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

SUBSCRIBED AND SWORN TO BEFORE ME THIS 4th DAY OF APRIL, 2008

P. MICHAEL MAHONEY
United States Magistrate Judge
Northern District of Illinois

7